**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 6, 2005**

Charles R. Fulbruge III
Clerk

REVISED JUNE 22, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-30481

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD CRAIG SCROGGINS,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before GARWOOD, WIENER and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

In this direct criminal appeal our previous disposition appears in *United States v. Scroggins*, 379 F.3d 233 (5th Cir. 2004). Scroggins, in October 2004, filed in the Supreme Court of the United States a petition for writ of certiorari seeking to review that disposition. On January 24, 2005 the Supreme Court entered an order therein stating that, on consideration of the

petition for certiorari and response thereto:

> ". . . Motion of petitioner for leave to proceed *in forma pauperis* and petition for writ of certiorari are granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of *United States v. Booker*, 543 U.S. ____, 125 S.Ct. 738. ___ L.Ed.2d ___ (2005)."

The case is now again before us pursuant to that order of the Supreme Court.

Donald Scroggins was tried on two counts of a superceding indictment. Count one charged Scroggins and John Calvin Bryant with conspiring with each other, and with other unnamed known and unknown persons, from about October 1998 through about march 2001, to possess with intent to distribute "five (5) kilograms or more of cocaine hydrochloride (powder cocaine) and fifty (50) grams or more of cocaine base (crack cocaine)" in violation of 21 U.S.C. §§ 841 and 846. Count two charged Scroggins (alone) with distribution, and aiding and abetting distribution, of cocaine powder on or about November 15, 2000 in violation of 21 U.S.C. § 841(a)(1). The jury found Scroggins guilty on count one and not guilty on count two (Bryant was found not guilty on count one). Scroggins filed a timely motion for new trial which the district court denied. Thereafter, on April 24, 2002, the district court sentenced Scroggins to life imprisonment and five years' supervised release.

On Scroggins's timely appeal to this court, we remanded the case to the district court for further consideration of Scroggins's

2

motion for new trial in the interests of justice. *United States v. Scroggins*, 379 F.3d 233 at 256-57, 269 (5th Cir. 2004). We also remanded to the district court to conduct an in camera inspection of the presentence reports of two prosecution witnesses (Buchanan and Byrd) – which reports Scroggins had requested pretrial – to determine whether they contained any material *Brady* or *Giglio* information and, if so, to determine whether the failure to produce that information was harmless. *Scroggins*, 379 F.3d at 263-64, 269. We rejected Scroggins's other two challenges to his conviction. *Id*. at 262-63, 269.

At sentencing, the district court determined, at least largely (if not entirely) on the basis of the trial testimony of government witness Buchanan, that Scroggins's conspiracy conviction involved "more than 1.5 kilograms of crack cocaine," *id*. at 265, found that Scroggins had obstructed justice, *id*., and that he was dealer or organizer of a drug organization with five or more participants, which produced an unadjusted base offense level of 38 calculated solely on the amount of crack cocaine, U.S.S.G. § 2D1.1(c)(1), to which was added upward adjustments of four levels under U.S.S.G. § 3B1.1(a) for being a leader or organizer and of two more levels under U.S.S.G. § 3C1.1 for obstruction of justice, for a total adjusted base offense level of 43, which under the Guidelines provides a guideline sentence of *only* life imprisonment for an individual, such as Scroggins, in criminal history category I.

3

U.S.S.G., Sentencing Table.[1]

In his appeal to this court Scroggins argued, in his fourth point of error, that Buchanan's trial testimony "did not bear a sufficient indicia of reliability upon which to base a life imprisonment sentence," citing U.S.S.G. § 6A1.3 (sentencing

---

[1] Actually, the adjusted base offense level would be 44, but the U.S.S.G. Sentencing Table, application note 2, provides that "[a]n offense level of more than 43 is to be treated as an offense level of 43."

The applicable quantity of cocaine *powder* was not determined by the district court. We observed, *Scroggins* at 265 n.56, that in any event the amount thereof shown to be involved was "not close to" 150 kilograms required under U.S.S.G. § 2D1.1(c)(1) to produce an unadjusted base offense level (calculated solely on that drug's quantity) of 38 (or, with the noted upward adjustments, an adjusted base offense level of 43). If the quantity of cocaine powder had been "at least 50 KG but less than 150KG" then the unadjusted base offense would have been 36 (U.S.S.G. § 2D1.1(2)) and the adjusted base level would have been 42, producing a Guideline range of 360 months to life; if the quantity of cocaine powder had been "at least 15 KG but less than 150 KG" then the unadjusted base offense level would have been 34 (U.S.S.G. § 2D1.1(3)) and the adjusted base offense would have been 40, producing a guideline range of 292-365 months. If the quantity of *crack cocaine* had been "at least 500 G but less than 1.5 KG" then the unadjusted base offense level would have been 36, and the adjusted base offense level 42, producing a guideline range of 360 months to life; if the quantity of crack cocaine had been "at least 150 G but less than 500 G" then the unadjusted base offense level would have been 34, and the adjusted base offense level 40, producing a guideline range of 292-365 months; if the quantity of crack cocaine had been "at least 50 G but less than 150 G" then the unadjusted base offense level would have been 32, and the adjusted base offense level 38, producing a guideline range of 235-293 months.

21 U.S.C. § 841(b)(A)(ii) and (iii) provides for a statutory range of punishment of "not less than ten years or more than life" for drug trafficking involving 5 kilograms or more of cocaine powder or 50 grams or more of cocaine base. For the next lesser quantities, namely at least 500 grams of cocaine powder or at least 5 grams of cocaine base, the statutory sentencing range is "not less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(ii & iii).

4

information must have "sufficient indicia of reliability to support its probable accuracy"). This objection was raised in the district court. Under this point of error, Scroggins's principal contention focused on the quantity of crack cocaine, although he also argued that Buchanan's testimony supporting the obstruction of justice enhancement was unreliable (and he mentioned in passing, without elaboration, that "Buchanan's testimony also resulted in a four level leadership enhancement"). We rejected this contention as to the obstruction of justice enhancement. *Scroggins* at 265. However, as to the quantity of crack cocaine found, addressed in part IV.D of our opinion (*id*. at 265-69), "[w]e conclude[d] that the district court did not sufficiently scrutinize Buchanan's inconsistent statements and did not provide a rationale in the record for believing one version over another . . . [and] did not say anything about the differences between Buchanan's trial testimony and the information Buchanan gave [agent Green] and of which Green testified at sentencing." *Id*. at 267-68. Accordingly, "we remand[ed] the case for resentencing with respect to the quantity of crack cocaine (and, should it become relevant, the quantity of powder cocaine)." *Id*. at 269. In our conclusion, we "vacate[d] Scroggins's sentence as to the quantity of crack cocaine" and remanded "for resentencing not inconsistent with this opinion (Part IV.D hereof above)." *Id*. We pointed out that our opinion, of course, did not contemplate that there would be

5

resentencing thereunder "if the district court, pursuant to our remand, first sets aside the conviction." *Id*. at 269 n. 16.

We rejected Scroggins's three other challenges to his sentence. *Scroggins*, 379 F.3d at 269 n.62. For the first time on appeal he contended, in his fifth assignment of error, that "[f]or the reasons set forth in *United States v. Buckland*, 259 F.3d 1157, 1163 (9th Cir. 2001), rev'd, 277 F.3d 1173 [9th Cir. 2002] (en banc), *cert. denied*, 533 U.S. 1105 (2002) . . . § 841(b)(1)(A) is unconstitutional in light of . . . *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As a result . . . Mr. Scroggins . . . should be sentenced in accordance with . . . § 841(b)(1)(C)." We rejected that proposition, citing, *inter alia*, *United States v. Fort*, 248 F.3d 475, 483 (5th Cir. 2001). Scroggins also contended, in his sixth and final assignment of error, that his "sentence . . . offends the due process clause . . . in that Mr. Scroggins was held responsible for drug amounts representing a thirty fold increase in the amount of cocaine base charged in the indictment," without a jury determination of the quantity of cocaine base in excess of fifty grams. This contention was not raised in the district court. We rejected that assignment of error, citing, *inter alia*, *United States v. Salazar-Flores*, 238 F.3d 672, 673-74 (5th Cir. 2001). Scroggins's remaining challenge to his sentence was raised for the first time in a supplemental brief filed in July 2004, in which he argued that his sentence was unconstitutional because it was

6

enhanced by drug quantities, leadership role, and obstruction of justice, not found by the jury, relying on the reasoning of *Blakely v. Washington*, 124 S.Ct. 2531 (2004). He conceded that this contention would have to be reviewed under the plain error rule, as an objection on this basis was not made below. Because Scroggins did not file or seek to file this supplemental brief until nearly two months after oral argument (and had not previously raised it in this court, at oral argument, or in his opening brief, reply brief or earlier supplemental briefs), we "decline[d] to address this issue now," noting that our order granting the motion to file this supplemental brief stated that it did not determine that any issue raised in the brief was properly or timely before us. *Id*., 379 F.3d at 269-70 n.62. We likewise noted that that issue was in any event foreclosed by our decision in *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004).

Following the above noted remand for reconsideration in light of *Booker*, we requested that the parties file supplemental letter briefs with us stating their respective contentions as to the proper course of action we should follow.

In his post-remand brief Scroggins contends:

> ". . . in the event the District Court was to deny a new trial on the grounds identified in this Court's earlier opinion . . . Mr. Scroggins submits that he could not then be resentenced under a sentencing guideline system that the United States Supreme Court found to be unconstitutional in *Booker*. In short, Mr. Scroggins would be entitled to be resentenced in accordance with Justice Stephen's [sic] merits opinion in *Booker*. . . .

7

. . .

     As to Justice Breyer's remedy opinion in *Booker*, if a new trial was denied by the District Court on remand, Mr. Scroggins submits that at any resentencing the Due Process Clause would prohibit the District Court from imposing a sentence greater than that authorized by the jury verdict in the case. The clause prohibits courts from interpreting a law in such a way as to do indirectly what a legislature may not do directly, that is increase a defendant's exposure to punishment beyond that which was authorized when the conduct occurred. . . . Here, Mr. Scroggins *expected* to be sentenced under mandatory sentencing guidelines consistent with his Sixth Amendment right to have those facts necessary to increase punishment to be proven beyond a reasonable doubt. Nevertheless, applying Justice Breyer's remedial decision in *Booker*, which demoted the mandatory guidelines to advisory guidelines, to Mr. Scroggins, would strip Mr. Scroggins of his constitutional protections against *ex post facto* laws created by a judicial enlargement."

We reject that contention. It is at the least implicitly contrary to the holding in Justice Breyer's *Booker* opinion that ". . . we must apply today's holdings – *both* the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to *all* cases on direct review." *Booker*, 125 S.Ct. at 769 (emphasis added). Scroggins's case is still on direct review. There is no warrant for not applying Justice Breyer's *Booker* opinion to this case. Moreover, Scroggins's contention in this respect is plainly inconsistent with our holdings in, for example, *United States v. Mares*, 402 F.3d 511 (5th Cir. 2005) (No. 03-21035, March 4, 2004, Slip Op. 1667), *pet. for cert.* filed March 30, 2005 (No. 04-9517), and *United States v. Holmes* (No. 03-41738, 5th Cir. April 6, 2005, Slip Op. 2160). Each of those cases was a direct appeal from a

8

conviction, following a jury trial, where the pre-*Booker* sentence was based on guideline determinations depending on facts not found by the jury. We stated in *Mares* that

> "[Appellant] argues that he was deprived of his Sixth Amendment right to a jury trial because the sentencing judge enhanced his sentence under a mandatory Guidelines system based on facts found by the judge that were neither admitted by him nor found by the jury. Mares, however, did not object on this basis in the district court and our review is only for plain error." *Id.*, Slip op. at 1676.[2]

We went on to hold that there was error and that it was plain, but that the appellant had not carried his burden of demonstrating prejudice, stating:

> ". . . the error is the imposition of a sentence, which was enhanced by using judge found facts, not admitted by the defendant or found by the jury, in a mandatory Guideline system.
>
> . . . Since the error was using extra verdict enhancements to reach a sentence under Guidelines that bind the judge, the pertinent question is whether Mares demonstrated that the sentencing judge – sentencing under an advisory scheme rather than a mandatory one – would have reached a significantly different result." Slip op. at 1677.

Similarly, we stated in *Holmes* (likewise a plain error review in a jury tried case):

> "The precise Sixth Amendment error identified in *Booker* is *not* the use of extra-verdict enhancements that increase a sentence; the constitutional error is that

---

[2]   This is likewise the case here, there was no objection in the district court that the sentence was based on facts not found by the jury. Nor (except as to drug quantity) was any such objection made in this court (apart from the overly belated July 2004 post-argument supplemental brief).

9

extra-verdict enhancements were being used under mandatory guidelines. . . .

> Thus, in applying the third prong [of the plain error test], 'the pertinent question is whether [the defendant] demonstrated that the sentencing judge – sentencing under an advisory scheme rather than a mandatory one – would have reached a significantly different result.' [quoting *Mares*] . . . Absent some indication in the record that the outcome would have been different if the district court had been operating under an advisory system, a defendant fails to carry his burden of demonstrating prejudice and therefore that the error affected his substantial rights." *Id.* at slip op. 2189.

The government in its post-remand brief takes the position that since we have ordered resentencing as to drug quantity, that such resentencing should be pursuant to Justice Breyer's opinion in *Booker*. We agree. The government, however, *also* takes the position that we previously found no error (nor insufficiency of evidence) as to the guideline enhancements for leadership role or obstruction of justice, and there is nothing to indicate that under an advisory, rather than a mandatory, guidelines system the trial judge would not have similarly enhanced the sentence, so as to those aspects of the sentence Scroggins had not carried his burden on plain error review of demonstrating prejudice and, accordingly, there should be no resentencing as to them. While we generally agree with the government's premises, we do not fully agree with its ultimate conclusion in this respect as applied to the facts here.

Here, we have only a *single* sentence for a *single* offense. If the district court does not grant a new trial, pursuant to our

10

prior opinion, there *will* be a resentencing, at least as to determination of drug quantity. Justice Breyer's *Booker* opinion describes sentencing under an advisory (non-mandatory) guidelines scheme, as follows:

> "Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals. See 18 U.S.C.A. § 3553(a) (Supp. 2004). The Act nonetheless requires judges to consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004). And the Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2) (main ed. and Supp. 2004) . . . ." *Id.*, 125 S.Ct. at 764-65.

The standard of review of a sentence imposed under this "advisory" system – at least assuming that the sentencing court did consider such matters and did not err in its determination of what the guidelines advised – is reasonableness. While some or all of the particular matters to be considered as above indicated apply to the individual steps by which an overall sentence is arrived at, many will apply, or also apply, to the ultimate sentence itself – or to a distinct component of it such as the term of imprisonment – particularly where the sentence is only for a single offense.

Resentencing herein shall be pursuant to Justice Breyer's

11

*Booker* opinion, with Scroggins and counsel present and having, *inter alia*, an opportunity to speak under FED. R. CRIM. P. 32(4)(A). The district court may, should it deem it appropriate, reconsider its determinations that Scroggins was a leader or organizer and/or obstructed justice, as well as its drug quantity determinations, and it *shall* evaluate the ultimate sentencing effect of any and all such determination under an advisory, non-mandatory, guidelines system.   We also note in this connection that in respect to all these three determinations as made at the original sentencing, the district court relied largely on the trial testimony of Buchanan. The government in its post-remand brief states that:

> ". . . the case should be remanded in accordance with the Fifth Circuit's previous opinion so that the government may establish with more certainty the types and quantity of drugs involved in defendant's offense.  The district judge will then have an opportunity, not only to hear and consider evidence with respect to amounts of drugs defendant was involved with, but also the issue of whether defendant should be granted a new trial."

We hold that, under the particular circumstances of this case, the district court may also, in its discretion, hear and consider evidence as to Scroggins's role in the offense under section 3B1.1 of the Guidelines and whether he obstructed justice under section 3C1.1 of the Guidelines.  The court may also hear evidence bearing on whether or not – notwithstanding that the Guidelines (and pertinent Sentencing Commission policy statements) must be considered and taken into account – a non-guideline sentence would be more appropriate in light of the other factors and

12

considerations set out in Justice Breyer's *Booker* opinion.

Accordingly our prior disposition is modified so that Scroggins's sentence is VACATED and, if the district court does not grant a new trial pursuant to our prior opinion, then Scroggins shall be resentenced consistent with this opinion. In all other respects our prior disposition remains in effect.

SENTENCE VACATED; CAUSE REMANDED.

13