**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANCISCO BANDA, also known as
Paco,

Defendant - Appellant.

No. 05-3234

(D. Kansas)

(D.C. No. 00-CR-40126-02-RDR)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit
Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Francisco Banda pled guilty to one count of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. He was originally sentenced to 180 months' imprisonment. Following an appeal and a remand by this court, Banda was resentenced to 150 months' imprisonment. He now appeals that sentence.

## BACKGROUND

On December 20, 2000, a grand jury indicted Banda, Adam Grabel Guzman, and Michael Thomas Albers on six counts of various drug-related offenses. As indicated, Banda pled guilty to one count of conspiracy to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

In initially sentencing Banda to 180 months' imprisonment, the district court overruled his forty-two objections to the presentence report ("PSR") prepared by the probation office, many of which related to the estimates of the drug quantities involved in the conspiracy. The court then adopted the PSR and sentenced Banda to 180 months' imprisonment.

Banda appealed his sentence, and our court remanded the case for resentencing after concluding that the district court, in merely adopting the PSR, had failed to comply with its fact-finding obligations under then Fed. R. Crim.

P. 32(c)(1), now 32(i)(3), with respect to disputed portions of the PSR.  See United States v. Banda, 87 Fed. Appx. 129, 2004 WL 171630, at **1 (10th Cir. Jan. 29, 2004).  We also directed the district court on remand to clarify the proper adjustment of Banda's offense level for his participation as a manager or supervisor under the United States Sentencing Commission, Guidelines Manual, ("USSG") §3B1.1 (Nov. 2001).

Following our remand, but before Banda was resentenced, the Supreme Court issued its decisions in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 125 S. Ct. 738 (2005).  Booker held that the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Booker, 125 S. Ct. at 756.  The remedy for this constitutional infirmity was to sever that portion of the Sentencing Reform Act of 1984 which made the Guidelines mandatory, thereby rendering them advisory.  Booker specifically directed lower courts to apply its holdings "to all cases on direct review."  Id. at 769.

On remand, Banda challenged his sentence on various grounds, including the appropriate application of Booker to his sentence.  He appeared to argue that the district court should apply the substantive Sixth Amendment holding of

Booker to the calculation of his sentence, but not the remedial holding. He accordingly argued the district court should "impose a Guidelines sentence without any enhancements based on judge found facts." Mem. & Order at 3, Appellee's Br. attach. D. He further argued that application of the remedial portion of Booker to him would violate his due process rights, or, alternatively, if the remedial portion was applied, the district court should "make all factual determinations that increase his sentence above the guideline sentence based upon a beyond a reasonable doubt standard." Id. Banda also argued that the evidence did not support an increase in his sentence based upon drug quantities or his status as a leader or organizer, and that the court should consider his extraordinary post-offense rehabilitation in sentencing him.

The district court rejected Banda's legal arguments about the applicability of Booker, concluding that it was obligated to sentence him in accordance with all of Booker's pronouncements. The court then specifically addressed all of Banda's objections to the PSR which our court had determined were inadequately addressed at Banda's first sentencing proceeding. With respect to Banda's multiple objections to drug quantities, the district court found:

> The amount of drugs in this case was calculated from the following
> material recounted in the presentence report: (1) ten pounds of
> methamphetamine that [co-conspirator] Patterson admitted to
> purchasing from [Banda]; (2) 579.14 grams of methamphetamine and
> 230.78 grams of marijuana seized during controlled purchases on
> four occasions in April 2000, and once in November 2000, and once

-4-

in December 2000; (3) 13 ounces of methamphetamine sold to [co-defendant] Albers by [Banda] in July 1999; (4) five pounds of methamphetamine and 80 pounds of marijuana supplied by [Banda] to Albers in September 1999; (5) four pounds of methamphetamine and 58 pounds of marijuana brought to Albers' business on December 31, 1999; (6) 68 pounds of marijuana provided to Albers by [co-defendant] Adam Guzman in tires; and (7) 78 pounds of marijuana Albers transported from Dodge City, Kansas to Salina, Kansas for [Banda]. These figures add to a total of 20,479.53 grams of methamphetamine and 165,341.18 grams of marijuana. With the conversion of these amounts to marijuana, the total becomes 41,070.32 kilograms of marijuana. Based upon that amount, [Banda's] base offense level is 38.

Id. at 7. The court then explained why it rejected Banda's objections to the drug quantities identified in the PSR or, in the case of one objection, why the court found it unnecessary to address it and in the case of another objection, why the court decided to omit from the drug quantity calculation the amount challenged in the objection. The court also noted that "[e]ven if [it] were to reduce the amounts contained in the presentence by one-half, [Banda's] offense level would remain at level 38." Id. at 9. The court further explained why it found sufficient evidence to increase Banda's base offense level by three levels because he was a manager and supervisor under USSG §3B1.1. Finally, the court examined Banda's post-conviction rehabilitation efforts under 18 U.S.C. § 3553(a), concluding that those efforts were "commendable," but not "present to an exceptional degree" as required in order to be an appropriate ground for downward departure. Mem. & Order at 15, Appellee's Br. attach. D.

The district court then sentenced Banda to 150 months, stating its belief that "this sentence will meet the sentencing objectives of deterrence, punishment, rehabilitation, and protection of the public." Id. at 16. The court further explained that it was "a fair and reasonable sentence, and it is a sentence sufficient, but not greater than, necessary to comply with the aforementioned sentencing purposes in light of all of the circumstances in this case, including the nature and circumstances of the offense and the history and characteristics of the defendant." Id.

Banda appeals that sentence, arguing (1) the court erred in basing its "relevant conduct determinations on unreliable hearsay contained in police reports of witnesses rather than on sworn testimony before the Grand Jury by the same persons that contradicted and was inconsistent with the police reports," Appellant's Br. at 2; (2) failing to have the jury make findings relevant to sentencing is structural error requiring automatic reversal; (3) the Fifth Amendment bars application of Booker's remedial holding; and (4) the district court violated the Sixth Amendment by using a preponderance of the evidence standard to find facts which increased Banda's sentence beyond what could have been imposed based upon facts he admitted.

**DISCUSSION**

**I. Relevant conduct**

Banda pled guilty to conspiring to distribute more than 500 grams of methamphetamine. The PSR described additional amounts of drugs, including various activities by Banda's co-conspirators. In his sentencing memorandum filed with the district court and at his sentencing hearing, Banda contested the drug amounts attributed to him by the PSR. The district court concluded that "the government ha[d] sustained its burden of proof as to the drug quantity for the base offense level," found that "the amounts attributable to [Banda] in the presentence report [were] correct, with one minor exception" and determined that 41,070.32 kilograms of marijuana were attributable to Banda. Mem. & Order at 9, 7, Appellee's Br. attach. D.

Banda argues that the PSR erroneously relied in part upon statements made by various co-conspirators to law enforcement officers and contained in police reports, which contradict the testimony by those co-conspirators before the grand jury. For example, Banda points to the drug quantities alleged in paragraph 53 of the PSR, which described statements of co-conspirator Patterson as follows:

> Patterson, [co-conspirator] Jacob, and [co-conspirator] Patrick were called to testify before a Grand Jury sitting in Topeka, Kansas. Patterson admitted being present on approximately 20 to 30 separate occasions when Banda delivered ½ to 5 lbs. of methamphetamine to [co-conspirator] Michael Thomas Albers. Patterson also admitted delivering drugs for Albers, as did [co-conspirator] Daniels.

PSR ¶ 53, Def.'s App. Vol. 3. Banda argues Patterson's grand jury testimony discussed much smaller quantities of drugs, not nearly enough to support the attribution of ten pounds of methamphetamine calculated in the PSR. See PSR ¶ 69, id.

The government responds that it is permissible to rely upon hearsay statements in sentencing, provided they are reliable. Further, even if ten pounds of methamphetamine are eliminated from the sentencing calculus based upon Banda's objection to the quantity referenced in paragraph 53 of the PSR, that would not change his base offense level. Finally, the government argues the district court correctly found that the co-conspirator statements bore the minimum indicia of reliability necessary to support its drug calculation.

We have held that:

> [f]actual findings regarding drug quantities are reviewed for clear error and are reversed only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made. When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability.

United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) (internal quotations and citations omitted). Furthermore, even after Booker, "facts relevant to sentencing have generally been found by a preponderance of the evidence," and

"[n]othing in Booker changes this analysis." United States v. Magallanez, 408 F.3d 672, 684 (10th Cir. 2005). Finally, "[i]n a controlled substances case, a defendant is 'accountable for all quantities of contraband with which he was *directly involved* and, in the case of a jointly undertaken criminal activity, all *reasonably foreseeable* quantities of contraband that were within the scope of the criminal activity that he jointly undertook.'" United States v. Lauder, 409 F.3d 1254, 1267 (10th Cir. 2005) (quoting USSG §1B1.3, comment. (n.2)); see also United States v. Dazey, 403 F.3d 1147, 1176 (10th Cir. 2005) ("A defendant convicted of conspiracy is accountable for reasonably forseeable conduct in furtherance of the jointly undertaken criminal activity.").

Applying those standards, we find no clear error in the district court's calculation of drug quantities attributable to Banda. The court properly considered quantities Banda's co-conspirators handled. Further, there is no prohibition on considering hearsay testimony at sentencing, provided it bears indicia of reliability. "Plainly, the Federal Rules of Evidence do not apply at sentencing. Moreover, courts have traditionally been allowed to consider all sources of information in formulating an appropriate sentence." United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990) (citation omitted); see also United States v. Hershberger, 962 F.2d 1548, 1554 (10th Cir. 1992) ("[C]onstitutional provisions regarding the Confrontation Clause are not required to be applied

-9-

during sentencing proceedings."); United States v. Jimenez, 928 F.2d 356, 365 (10th Cir. 1991) ("[U]nder the guidelines, the amount of drugs upon which one is sentenced is not limited to the amount to which a defendant enters a plea of guilty. . . ."); USSG §6A1.3(a); id., comment. ("Reliable hearsay evidence may be considered [at sentencing]."). The statements of Banda's co-conspirators were therefore properly considered in calculating Banda's drug quantity.

Furthermore, the district court found those statements bore indicia of reliability:

> Having read all of the statements made by [Banda's] co-conspirators, the court is persuaded that the amounts attributable to [Banda] in the presentence report are correct, with one minor exception . . . , and that his participation in the conspiracy is as suggested in the presentence report. The court finds that the information supplied by Adam Guzman, Albers, Howze, Jacob, Patterson, Patrick and Maximo Guzman has the minimal indicia of reliability necessary for sentencing purposes.

Mem. & Order at 9, Appellee's Br. attach. D. After reviewing the record, we agree with the district court that Banda's co-conspirators' statements are sufficiently reliable to support the drug quantity calculation.[1] We accordingly

---

[1]Banda particularly challenges co-conspirator Patterson's statements as to drug quantity, reported in PSR ¶ 53. The district court explained its treatment of those statements:

> [Banda] suggests that the amounts contained in paragraph 53 of the presentence report are not found in the grand jury testimony of Patterson. [Banda] is correct. These amounts came from a statement

(continued...)

conclude that the district court did not commit clear error in calculating that drug quantity.

## II. Structural error

Banda argues it was structural error for the district court to find sentencing factors by a preponderance of the evidence, rather than the jury applying a beyond-a-reasonable-doubt standard. This argument fails for a number of reasons. First, <u>Booker</u> does not require that the jury find sentencing factors beyond a reasonable doubt. "[I]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment. Instead, the constitutional error was the court's reliance on judge-found facts to enhance [the defendant's] sentence *mandatorily*." <u>Lauder</u>, 409 F.3d at 1269; <u>see also</u> <u>Dalton</u>,

---

[1](...continued)
made by Patterson to FBI Task Force Agent Mike Metzler on October 26, 2000. Patterson did subsequently make different statements to the grand jury. The probation officer, in an effort to resolve these inconsistencies, did not calculate the amount of drugs attributable to [Banda] based upon the earlier statement made by Patterson to Agent Metzler.

Mem. & Order at 10-11, Appellee's Br. attach. D. The court further "agree[d] that the statements of the various participants were not always consistent, but [it] believe[d] that the amounts determined in the presentence report are reasonably calculated." <u>Id.</u> at 11.

409 F.3d at 1252 ("Booker . . . does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

Additionally, we have held that neither constitutional nor non-constitutional Booker error is structural. See United States v. Dowlin, 408 F.3d 647, 668-69 (10th Cir. 2005) (holding constitutional Booker error is not structural); United States v. Gonzalez-Huerta, 403 F.3d 727, 732-33 (10th Cir. 2005) (en banc) (holding non-constitutional Booker error is not structural). Sentencing in accordance with Booker is therefore not error, much less structural error.

### III. Ex Post Facto and Due Process

Banda next argues that the district court's application of the remedial holding of Booker (rendering the Guidelines advisory) violates the Constitution's Ex Post Facto and Due Process Clauses by exposing him to a sentence greater than what could be imposed under Booker's substantive holding alone.[2] This argument also fails for several reasons. First, Booker itself expressly stated that its holdings, including its remedial holding, apply to all cases on direct review.

------

[2]Banda explains this argument as follows: "The remedial portion of Booker . . . convert[s] the Guidelines from mandatory to advisory for the first time. In doing so the remedial portion . . . increased the maximum penalty that may be constitutionally imposed from that in a mandatory system—'the maximum authorized by the facts established by a plea of guilty or a jury verdict'[—] to that applicable in an advisory system." Appellant's Br. at 55 (quoting Booker, 125 S. Ct. at 755).

See Booker, 125 S. Ct. at 769 (in Justice Breyer's majority opinion in the remedial portion of the decision, stating "we must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review"). Second, our court, along with every other circuit to address this argument, has rejected it. See United States v. Rines, 419 F.3d 1104, 1106 (10th Cir. 2005), cert. denied, 126 S. Ct. 1089 (2006); see also United States v. Wade, No. 05-2181, 2006 WL 73474, at *2 (8th Cir. Jan. 13, 2006); United States v. Vaughn, 430 F.3d 518, 524 (2d Cir. 2005); United States v. Dupas, 417 F.3d 1064, 1068 (9th Cir.), amended, 419 F.3d 916 (9th Cir. 2005); United States v. Jamison, 416 F.3d 538, 539 (7th Cir. 2005); United States v. Lata, 415 F.3d 107, 110-12 (1st Cir. 2005); United States v. Scroggins, 411 F.3d 572, 576 (5th Cir. 2005); United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005).

## IV. Preponderance of the evidence standard

Banda articulates this issue as follows:  "The trial court violated [Banda's] 6th Amendment right to trial by jury when it determined the facts that increased [his] sentence beyond the sentence that could have been imposed solely on the facts [Banda] admitted to during the change of plea hearing by a preponderance of the evidence standard rather than beyond a reasonable doubt."  Appellant's Br. at 58.  We have essentially already addressed this argument.  Our court has already

held that <u>Booker</u> does not require sentencing factors to be proved beyond a

reasonable doubt. This panel is bound by that precedent.[3]

**CONCLUSION**

For the forgoing reasons, Banda's sentence is AFFIRMED.[4]

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3]Banda does not argue that his sentence is unreasonable under <u>Booker</u>. We therefore do not address that issue separately.

[4]We deny Banda's motion to abate this case pending the Supreme Court's decision in <u>State v. Recuenco</u>, 110 P.3d 188 (Wash.), <u>cert. granted</u>, 126 S. Ct. 478 (2005).