OPINION
{¶ 1} Appellant Wilson James appeals the decision of the Stark County Court of Common Pleas that found him guilty of Murder in violation of R.C. 2903.02(A) with a firearm specification. The following facts give rise to this appeal.
 {¶ 2} On September 27, 2004, Adam Smith was at a home located at 1455 Ohio Ave., N.E., Canton, Stark County, Ohio with Matthew Bacorn, Zachary Bacorn, Christian James, Darius James and several other individuals. Christian and Darius James are appellant's sons. Sometime that evening, Smith and Christian got into a verbal disagreement wherein Christian threatened to stab Smith and Smith countered by threatening to choke Christian. (2T. at 174-75; 206). At no time did the argument become physical. During the argument, Christian called appellant and told him to come pick him up because Smith had threatened him. (2T. at 208; 218; 244-45; 332; 333). While talking with his son, appellant was angry and yelling. (2T. at 333; 348; 359).
 {¶ 3} When Christian got off of the phone, he told Smith, "My dad is coming to take care of you." (2T. at 177-78). Smith and Matthew Bacorn left the residence for approximately 45 minutes. When they returned, they remained outside. (2T. at 179; 196; 199; 208; 219).
 {¶ 4} Christian had remained inside the home watching television. (2T. at 333). Since the argument was over and he wanted to stay, Christian tried to call appellant and tell him not to come. Unfortunately, Christian was unable to reach appellant. (2T. at 246; 334; 351; 357).
 {¶ 5} At approximately 11:30 p.m., while Smith and the others were sitting outside appellant drove up with his headlights off. (2T. at 182; 210-11). He got out of his Jeep, walked over to Smith and the others and asked for his sons. (2T. at 182; 183; 197; 212; 221; 333; 352).
 {¶ 6} When Christian came outside, appellant asked him which person had threatened him. The witnesses testified to different accounts of what then occurred. All witnesses agreed that Appellant had a gun. Christian testified that Appellant and Adam just started wrestling and fell to the ground. (2T. at 336-37). Adam was on top hitting Appellant when the gun went off. (2T. at 337-38). Zach Bacorn testified that Appellant pulled his gun and walked towards Adam. Adam then took Appellant to the ground and they were rolling around. Zach testified that Appellant was on top when the gun went off. (2T. at 213-15). Matt Bacorn testified that Appellant pulled out his gun and hit Adam in the head. Adam pushed Appellant against a truck and there was a scuffle and the gun went off. (2T. at 183-85).
 {¶ 7} Immediately after he shot Smith, appellant ordered his sons to get in the car and sped away. After dropping the boys at their aunt's home, appellant went to his own residence. (2T. at 340).
 {¶ 8} When police arrived on scene, they found Smith lying in the yard unconscious and learned that appellant was the shooter. (2T. at 156-58).
 {¶ 9} Smith was taken to the hospital, but passed away as a result of the gunshot wound.
 {¶ 10} Sometime later police went to appellant's home to arrest him. Police described his demeanor as calm and relaxed and noted that he had no visible signs of any injury. After searching his home and his Jeep, police were unable to locate a gun. (2T. at 162-66; 230-35; 241).
 {¶ 11} Chief Deputy Coroner PSS Murthy, Dennis Florea of the Stark County Crime Lab, and Detective Lancaster of the Canton Police Department each testified that Adam Smith's gunshot wound was a contact or near contact wound. (2T. at 236; 2666-7; 305). This means that the muzzle of the gun was either against Smith's clothing or within three (3) to four (4), inches. (2T. at 266-67). The Coroner also testified that Adam Smith had four (4) small cuts or bruises and that these could be consistent with a struggle. (2T. at 300-301; 319).
 {¶ 12} On September 28, 2004, Defendant-Appellant, Wilson James was arrested and charged with Aggravated Murder. On November 1, 2004, Appellant was indicted by the grand jury on one count of Aggravated Murder with a Firearm Specification.
 {¶ 13} Appellant's case proceeded to a jury trial on February 14, 2005. At the conclusion of the trial the court instructed the jury on the charge of Aggravated Murder with a Firearm Specification and the lesser offenses of Murder and Negligent Homicide.
 {¶ 14} The jury found Appellant guilty of the lesser charge of Murder with a Firearm Specification. A sentencing hearing was held immediately after the jury verdict. Appellant was sentenced to a prison term of fifteen (15) years to life for Murder and three (3) years for the Firearm Specification to be served consecutively. (Sentencing Entry, App. at A-3).
 {¶ 15} Appellant timely filed his Notice of Appeal and has raised the following three assignments of error for our consideration:
 {¶ 16} "I. APPELLANT'S CONVICTION FOR MURDER WITH A FIREARM SPECIFICATION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 17} "II. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO FAIL [SIC] TO INSTRUCT THE JURY ON THE DEFENSE OF ACCIDENT.
 {¶ 18} "III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO REQUEST IN WRITING AND/OR FAILING TO OBJECT WHEN THE TRIAL COURT FAILED TO INSTRUCT ON THE DEFENSE OF ACCIDENT."
 I. {¶ 19} In his First Assignment of Error, appellant maintains that his conviction for Murder is against the weight of the evidence. We disagree.
 {¶ 20} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 21} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 22} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 23} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller
(2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 24} In the case at bar, appellant was convicted of the lesser offense of murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." To find the appellant guilty of murder as charge in the case at bar, the jury would have to find that the appellant purposely caused the death of another. (3T. at 437).
 {¶ 25} R.C. 2901.22 Culpable mental states, provides:
 {¶ 26} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 27} "Intent need not be proven by direct testimony. Statev. Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, intent to kill `may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.' State v. Robinson
(1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, at paragraph five of the syllabus; State v. Eley (1996),77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648". State v. Stallings
(2000), 89 Ohio St.3d 280, 290, 2000-Ohio-159, 731 N.E.2d 159,171.
 {¶ 28} The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. Statev. Mackey (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496, 727 N.E.2d 920, citing Statev. Widner (1982), 69 Ohio St.2d 267, 431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); State v. Dunlap (1995), 73 Ohio St.3d 308,316, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096,116 S.Ct. 1096, 133 L.Ed.2d 765. State v. Banks, 10th Dist. No. 01 AP-1179, 2002-Ohio-3341 at ¶ 24.
 {¶ 29} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496, 691 N.E.2d 1058 (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting State v. Brown (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed,77 Ohio St.3d 1468, 673 N.E.2d 135; see, also, State v. Smith (1993),89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (finding that pointing gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). Banks, supra, at ¶ 26.
 {¶ 30} With respect to the murder charge, the state presented testimony from two eyewitnesses. Although each of the witnesses' testimony was sometimes inconsistent regarding the shoves and blows exchanged in the time leading up to shooting, each witness testified unequivocally that appellant had a handgun. Matthew Bacorn testified that appellant pulled the handgun from his pocket and used it to hit the victim in the head. (2T. at 183). Matthew further testified that appellant put the pistol against the victim's chest and fired a shot. (Id. at 185; 189). Zachary Bacorn testified that appellant pulled the pistol from his pocket, cocked the hammer and walked toward the victim. (Id. at 213-14). Appellant shot the victim as he was on his back lying on the ground. (Id. at 215; 225). Appellant immediately fled the scene. The handgun was never recovered.
 {¶ 31} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of murder.
 {¶ 32} We hold, therefore, that the state met its burden of production regarding each element of the crime of murder and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 33} Although appellant cross-examined the State's witnesses in an attempt to show the inconsistencies in the various statements and further in an attempt to demonstrate that the firing of the gun was negligent to contradict the State's inference that he purposely caused the victim's death, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA091-236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 34} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant purposely caused the death of another. R.C. 2903.02(A). Accordingly, appellant's conviction for murder was not against the manifest weight of the evidence.
 {¶ 35} Appellant's first assignment of error is overruled.
 II. {¶ 36} In his Second Assignment of Error appellant maintains that the trial court committed plain error by failing to instruct the jury on the defense of accident. We disagree.
 {¶ 37} The record indicates that defense counsel did not request an instruction on the defense of accident. Defense counsel also did not object to the trial court's failure to instruct on the defense of accident. Crim.R. 30(A) addresses the giving or failure to give a jury instruction. This rule provides, in pertinent part:
 {¶ 38} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 39} Accordingly, because defense counsel did not object pursuant to Crim.R. 30(A), we must review this matter under a plain error analysis.
 {¶ 40} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 41} In U.S. v. Dominguez Benitez (June 14, 2004),524 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. SeeArizona v. Fulminante, 499 U.S. 279, 309-310 (1991) (giving examples).
 {¶ 42} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States,328 U.S. 750 (1946). To affect "substantial rights,". . ., an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 43} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v.Perry (2004), 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 44} In the case at bar, appellant's trial counsel requested and received an instruction on negligent homicide. (3T. at 441-444).
 {¶ 45} A homicide is not excusable on the basis of accident unless it appears from the evidence that at the time of the killing the offender was acting in a lawful manner and without negligence. In re Jackson (1975) 45 Ohio App.2d 243,344 N.E.2d 162; State v. Palmer (Dec. 27, 1988], Franklin App. No. 87AP-1124. A person causing the death of another while engaged in unlawful activity is criminally responsible even if the firearm discharges accidentally, State v. Thrash (1952),93 Ohio App. 458, 113 N.E.2d 675). In the case at bar, the record contains evidence that appellant arrived at the scene in an agitated state carrying a loaded firearm. The record further reveals that appellant engaged in a physical altercation with the victim prior to the shooting. Accordingly the evidence supports the inference that appellant was engaged in unlawful activity at the time of this shooting and one essential element of the defense of accident is missing. The evidence did not support an instruction on accident, and the trial court did not err in declining to so instruct the jury.
 {¶ 46} Additionally, this Court has addressed a similar claim in State v. Glagola (Nov. 10, 2003), 5th Dist. No. 2003CA00006 and concluded the trial court properly refused the requested charge of negligent homicide during a murder trial. The court reasoned that such an instruction would have represented an unreasonable compromise between the State's position that the defendant knowingly killed the victim, and the defendant's position that the killing was purely accidental. Thus the charge would have been inconsistent with either the State's or the defendant's evidence. Several other courts have come to the same conclusion that a defendant's defense of accident would have contradicted a charge of negligent homicide because the defense of accident is a complete defense and such a defense would contradict an instruction that the homicide occurred negligently. These courts have concluded, therefore, that no instruction on negligent homicide is required when the theory of the defense is predicated on an accident. State v. Gay (Nov. 2, 1990), 11th Dist. No. 88-P-2043, citing State v. Hill (1987),31 Ohio App.3d 65. See also State v. Wiley (Mar. 4, 2004), 10th Dist. No. 03 Ap-340; State. v. Georgekopulos (Nov. 25, 1998), 9th Dist. No. 18797; State v. Samuels (Sept. 24, 1987), 8th Dist. No. 52527.
 {¶ 47} In the case at bar, trial counsel chose to pursue a negligent homicide defense rather than the defense of accident. As the two defenses are contradictory no instruction on accident is required when the theory of the defense is predicated on negligent homicide.
 {¶ 48} Accordingly, we find the appellant has failed to sustain his burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646. We find no manifest miscarriage of justice occurred in this case. State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 49} Appellant's Second Assignment of Error is overruled.
 III. {¶ 50} In his Third Assignment of Error, appellant maintains he received ineffective assistance of counsel when counsel failed to request and/or object to the trial court's failure to instruct on the defense of accident. We disagree.
 {¶ 51} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 52} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 53} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v.Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180.
 {¶ 54} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, 538 N.E.2d 373, quotingStrickland at 697. As such, we will direct our attention to the second prong of the Strickland test.
 {¶ 55} In appellant's Second Assignment of Error, we concluded the trial court did not commit plain error when it failed to instruct the jury on the defense of accident. Because appellant claimed the shooting was a negligent homicide a request for a jury instruction on accident would have been inconsistent with the defense's strategy. Due to the inconsistency that would have been created by requesting a charge on negligent homicide and pursuing the defense of accident, appellant was not prejudiced by defense counsel's failure to request such an instruction.
 {¶ 56} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. SeeStrickland, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702,122 S.Ct. 1843; Kimmelman v. Morrison, 477 U.S. 365, 382,106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Strickland, supra, at 689,104 S.Ct. 2052; United States v. Cronic, 466 U.S. 648, 656,104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v. Gentry
(2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 57} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v. Myers (2002),97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 58} Accordingly, we conclude appellant cannot establish that he was prejudiced by defense counsel's performance. There is no evidence that indicates the result of the trial was unreliable or the proceeding was fundamentally unfair as a result of defense counsel's failure to request a jury instruction on the defense of accident.
 {¶ 59} Appellant's Third Assignment of Error is overruled.
 {¶ 60} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Gwin, J., Wise, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed. Costs to appellant.