OPINION
{¶ 1} Defendant-appellant Edward Lee Smith appeals from his conviction and sentence for reckless homicide pursuant to R.C. §2903.041 with a firearm specification. On November 4, 2004, Smith was indicted for two counts of murder in violation of R.C. §§2903.02(A) and (B), both with firearm specifications, in connection with a shooting that occurred on July 31, 2004. On November 9, 2004, Smith pled not guilty to said charges.
 {¶ 2} Following a five day jury trial that began on February 28, 2005, and concluded on March 4, 2005, Smith was found guilty of the lesser included offense of reckless homicide. On March 23, 2005, the trial court sentenced Smith to five years in prison for the reckless homicide and an additional three years in prison for the firearm specification, those terms to be served consecutively. Smith filed a notice of appeal with this Court on April 6, 2005.
 I {¶ 3} In the early afternoon on July 31, 2005, Ellen Dansby visited Napoleon's Palace, a restaurant and bar located on Germantown Pike in Jefferson Township, Ohio. After entering the establishment, Dansby observed the appellant, Smith, sitting at the bar. Dansby and Smith had been romantically involved with each other sporadically for approximately twenty years, but the relationship had subsequently ended in February or March of 2004.
 {¶ 4} Upon observing Smith, Dansby approached him and asked to speak with him privately. Smith got up from his seat at the bar, and the two proceeded to a separate room in the restaurant where they sat down at a table. After a short discussion, Smith and Dansby exited the restaurant and walked into the parking lot to Dansby's vehicle. Smith testified that Dansby wanted to return a handgun that she had borrowed from him without his knowledge. Once out at her vehicle, Dansby returned the handgun to Smith, and the two continued to talk. Smith testified that Dansby was sitting in the driver's seat of the vehicle and he was leaning in the driver's side window.
 {¶ 5} While the two continued speaking, Smith testified that he was twirling the handgun around on his finger and accidentally pulled the trigger. The handgun discharged, and he shot Dansby in the head, immediately rendering her unconscious and unresponsive. Smith testified that he did not realize that the gun was loaded when Dansby returned it. Smith then went back inside the bar and ordered another drink for himself and one of his friends.
 {¶ 6} Shortly thereafter, other bar patrons discovered Dansby slumped over the steering wheel in her vehicle, which was still running. Bar employees called 911, and an emergency team was dispatched. Jefferson Township paramedics arrived at the scene of the shooting and transported Dansby, who was still breathing but unconscious, to Miami Valley Hospital for treatment. Due to the nature and extent of her injuries, Dansby died in the early morning hours on August 1, 2005.
 {¶ 7} Captain Glen McIntosh and Detective John Clymer from the Montgomery County Sheriff's Office also arrived at the scene to investigate the shooting. James Adcock, an employee at a nearby barbershop, told the investigators that he heard what sounded like a firecracker going off and observed Smith standing near a green vehicle. Adcock testified that he waved at Smith and then walked back inside the barbershop. After interviewing other bar patrons, Captain McIntosh and Detective Clymer learned that Smith was the last person who spoke with Dansby prior to her being shot. The officers then proceeded to Smith's residence to question him in regard to the shooting.
 {¶ 8} Smith, who left the bar with a friend just as the police were arriving, returned to his residence at 710 Oakleaf Drive and called the bar. The bartender, Gloria Young, testified that she told Smith that Dansby had been injured outside the bar and that she might possibly be dead. Young testified that Smith told her that he did not hurt Dansby. Rather, Smith told her that Dansby's boyfriend arrived while they were speaking in the parking lot. Dansby and her boyfriend got into a fight, and Smith stated that he left and came back in the bar.
 {¶ 9} Captain McIntosh, Detective Clymer, and another officer, Major Copher, arrived at Smith's residence at approximately 4:30 p.m. When Smith did not immediately respond to the officers, they entered the house. The officers asked Smith to submit to questioning at the police station, and he agreed. Before they left, Major Copher discovered a silver revolver in the pocket of Smith's pants. The gun was later identified as the weapon used to shoot Dansby.
 {¶ 10} At the police station, Smith reiterated to Detective Clymer that he did not harm Dansby and stated that they should speak to Dansby's boyfriend concerning the shooting. Smith was subsequently arrested and booked into the county jail. At trial, Smith admitted that he shot Dansby but claimed that it had been an accident. As aforementioned, Smith was convicted of reckless homicide after a jury trial and was sentenced to an aggregate of eight years in prison.
 {¶ 11} From his conviction and sentence, Smith appeals.
 II {¶ 12} Smith's first assignment of error is as follows:
 {¶ 13} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY SENTENCING THE DEFENDANT-APPELLANT TO A TERM OF INCARCERATION EXCEEDING THE MINIMUM TERM."
 {¶ 14} In his first assignment, Smith contends that the trial court erred in imposing a non-minimum sentence in violation of the rules announced in Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, and U.S. v. Booker (2005), 543 U.S. 220,125 S.Ct. 738. Smith argues that because he was never previously convicted of a crime and never served any prison time, the trial court was bound by R.C. § 2929.14(B) to sentence Smith to the minimum term of incarceration. Additionally, Smith asserts that pursuant to R.C. § 2929.19(B)(2)(d), the trial court erred when it failed to identify the specific factual findings supporting the sentence it imposed on him.
 {¶ 15} In State v. Foster (2006), 109 Ohio St.3d 1,2006-Ohio-856, the Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional. In so doing, the Supreme Court applied the rules set forth in Blakely
and Booker and held that "aside from the exception for prior criminal convictions and the defendant's consent to judicial fact-finding, the Sixth Amendment prohibits a judge from imposing a sentence greater than that allowed by the jury verdict or by the defendant's admissions at the plea hearing." Foster, supra at ¶ 7. Thus, because a jury verdict alone does not determine the non-minimum sentence that R.C. § 2929.14(B) permits the court to impose, that section violates Blakely principles and is unconstitutional. Foster, supra at ¶ 61. Further, any case involving a non-minimum sentence imposed on the findings contemplated by R.C. §§ 2929.14(B) and 2929.19(B)(2) and which was pending on direct review when Foster, supra, was decided must be reversed and remanded to the trial court for resentencing de novo. Id. at ¶¶ 104, 105.
 {¶ 16} When sentencing Smith to five years for reckless homicide, the trial court stated the following:
 {¶ 17} "The Court finds that sentencing the defendant to the minimum sentence would demean the seriousness of the offender's conduct and the offense. Furthermore, given the facts and circumstances and the statements, as I indicated, that this offense was the worst form of the offense."
 {¶ 18} Pursuant to R.C. § 2929.14(B), the trial court made the above findings in order to impose a non-minimum sentence. However, because the finding involved a fact neither allowed by the jury's verdict nor admitted by the Defendant during the trial, the non-minimum sentence is unconstitutional in light of the Supreme Court's holding in Foster. Thus, Smith's aggregate eight year sentence is reversed, and the case is remanded for resentencing.
 {¶ 19} As we recently noted in State v. Mitchell (March 31, 2006), Montgomery App. No. 21020, 2006-Ohio-1602, before imposing a greater/harsher sentence, the trial courts should be mindful of the restraints set forth in North Carolina v. Pearce (1969),395 U.S. 711, 89 S.Ct. 2072. "As the Pearce decision emphasized `the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."Mitchell, supra at ¶ 12, citing, Pearce at 2081.
 {¶ 20} Smith's first assignment of error is sustained.
 III {¶ 21} Smith's second and final assignment of error is as follows:
 {¶ 22} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF NEGLIGENT HOMICIDE."
 {¶ 23} In his final assignment, Smith contends that the trial court erred when it refused to instruct the jury on negligent homicide pursuant to R.C. § 2903.05. Smith argues that the trial court was required to give the instruction on negligent homicide to the jury because it is a lesser included offense of murder under R.C. § 2903.02(B). We disagree.
 {¶ 24} No instruction on negligent homicide is required when the theory of the defense is predicated on accident. State v.Hill (1987), 31 Ohio App.3d 65, 508 N.E.2d 1038. See also Statev. Wiley (March 4, 2004), Franklin App. No. O3AP-340,2004-Ohio-1008. In State v. Glagola (Nov. 10, 2003), Stark App. No. 2003CA00006, 2003-Ohio-6018, the Fifth District Court of Appeals concluded that the trial court properly refused the requested charge of negligent homicide during a murder trial. The court reasoned that such an instruction would have represented an unreasonable compromise between the State's position that the defendant knowingly killed the victim and the defendant's position that the killing was purely accidental. The court held that the charge would have been inconsistent with either the State's or the defendant's evidence. Thus, a defendant's defense of accident would contradict a charge of negligent homicide because the defense of accident is a complete defense, and such a defense would contradict an instruction that the homicide occurred negligently. State v. James (Jan. 23, 2006), Stark App. No. 2005C-A-00076, 2006-Ohio-271. We find the above reasoning persuasive in the instant case.
 {¶ 25} At the close of trial, the court charged the jury on the defense of accident in the following exchange:
 {¶ 26} "The defendant denies that he knowingly caused or attempted to cause physical harm to another by means of a deadly weapon as alleged in Count I, and denies any purpose to cause the death of another as alleged in Count II. He denies that he committed an unlawful act and says that the result was accidental."
 {¶ 27} "An accidental result is one that occurs unintentionally and without any design or purpose to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably anticipated or foreseen as a natural or probable result of a lawful act."
 {¶ 28} A review of the trial transcript clearly indicates that Smith chose to pursue an accident defense rather than a negligent homicide defense. As the two defenses are contradictory, no instruction on negligent homicide is required when the theory of the defense is predicated on accident. Simply put, Smith's entire case depended on the jury believing that Dansby's death occurred as a result of an accidental discharge of the firearm Smith possessed. The evidence adduced at trial does not support a charge of negligent homicide. Because Smith utilized the defense of accident, the trial court correctly refused to charge the jury on negligent homicide. In light of the above ruling, we decline to comment as to whether negligent homicide is a lesser included offense of murder under R.C. §2903.02(B) as Smith suggests in his brief.
 {¶ 29} Smith's final assignment of error is overruled.
 IV {¶ 30} In addition to the two errors raised in Appellant's brief, at oral argument the parties asked for permission to submit post-argument briefing in light of the Ohio Supreme Court's decision in State v. Foster. We granted the parties' request, and received from both parties supplemental memoranda addressing whether the holding in Foster operates as an ex post facto law.
 {¶ 31} Initially, we note that we are bound by the Ohio Supreme Court's mandate in State v. Foster, and thus as we have already stated, we must reverse and remand this case for resentencing, and will not direct the trial court to enter a specific sentence on remand. See State v. Stokes (Aug. 3, 2006), Cuyahoga App. No. 87319, 2006-Ohio-3966 (rejecting, without analysis, appellant's argument that the Foster holding operates as an ex post facto law because the Ohio Supreme Court's mandate in Foster requires an appellate court to reverse and remand for resentencing all cases pending on direct review at the time Foster was decided). Moreover, even if we were not bound by the mandate in Foster, we do not believe that the Ohio Supreme Court's holding in that case operates as an ex post facto law.
 {¶ 32} The United States Constitution Article I, Section 10, provides that no State shall pass any ex post facto law. The United States Supreme Court has stated that "[t]he Ex PostFacto Clause, by its own terms, does not apply to the courts."Rogers v. Tennessee (2001), 532 U.S. 451, 460. However, the Supreme Court did state that "[i]f a judicial construction of a criminal statute is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." Id. at 459.
 {¶ 33} The federal appellate courts have addressed the ex post facto argument in relation to the United States Supreme Court's decision in United States v. Booker (2005),543 U.S. 220, which held that the federal statutory sentencing guidelines were unconstitutional if mandatorily applied, and remedied the situation by making the guidelines advisory. See U.S. v.Scroggins (C.A. 5, 2005), 411 F.3d 572; U.S. v. Duncan (C.A. 11, 2005), 400 F.3d 1297; U.S. v. Fairclough (C.A. 2, 2006),439 F.3d 76. In United States v. Jamison, the Seventh Circuit Court of Appeals held that the remedial holding in Booker did not violate the ex post facto clause. (C.A. 7, 2005),416 F.3d 538, 539. The Court stated that "Jamison knew that he was committing a crime at the time he distributed cocaine base. The new judicial interpretation of the law brought about by Booker
affects his punishment, not whether his conduct was innocent. Distributing cocaine base was not made a crime by the Court's decision in Booker. Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code. Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in Rogers." Id.
 {¶ 34} We have not found any Ohio cases that directly address and present an analysis of the question of whether the holding inFoster operates as an ex post facto law. Accord State v.Lathan (May 19, 2006), Lucas App. No. L-03-1188, 2006-Ohio-2490
(declining to address whether the holding in Foster operates as an ex post facto law because the issue was not ripe for review until the appellant had been resentenced). However, we find the Seventh Circuit's rationale applicable to Smith's situation in light of the Ohio Supreme Court's decision in State v. Foster.
Smith knew that his actions constituted a crime when he shot Dansby. The Ohio Supreme Court's decision to sever the provisions of the Ohio sentencing statutes in Foster affects Smith's punishment, not whether his actions constituted a criminal act. The statutory range of punishment Smith faced before the decision in Foster was between one and five years, and after Foster,
Smith still faces between one and five years when his case is remanded for resentencing. Just as in Jamison, Smith was aware of the possible sentence he faced when committing the crime of felonious assault, and therefore, we conclude that the Ohio Supreme Court's decision in Foster does not violate the ex post facto clause.
 {¶ 35} Smith's supplemental assignment of error is overruled.
 V {¶ 36} With respect to the sentence imposed on Smith for reckless homicide in violation of R.C. § 2903.041 with a firearm specification, the judgment of the trial court is reversed and remanded to the trial court for resentencing. In all other respects the judgment of the trial court is affirmed.
Brogan, J. and Wolff, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).