OPINION
{¶ 1} Defendant-appellant Charles E. Davis appeals from the imposition of consecutive sentences for involuntary manslaughter, with a firearm specification, and tampering with evidence on July 11, 2006.
 {¶ 2} In the instant appeal, Davis contends that the trial court erred when it relied on the *Page 2 
on the "sentence packaging doctrine" to impose consecutive sentences because the Ohio Supreme Court recently rejected the doctrine in Ohio.State v. Saxon (2006), 109 Ohio St. 3d 176, 846 N.E.2d 824,2006-Ohio-1245. Additionally, Davis argues that the trial court erred by imposing a longer sentence after he had successfully appealed his previous conviction and sentence without making affirmative findings on the record regarding events that were discovered after the original sentencing. Lastly, Davis asserts that the retroactive application of the sentencing remedy created in State v. Foster (2006),109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, deprives him of his due process rights. For the following reasons, we reverse the decision of the trial court and reduce the sentence imposed to thirteen (13) years.
 I {¶ 3} We set forth the history of the case in State v. Davis (March 10, 2006), Clark App. No. 2005-CA-55, 2006-Ohio-1134 (hereinafter"Davis III"), and repeat it herein in pertinent part:
 {¶ 4} "Davis was indicted in 2001 on two counts of Murder, one count of Involuntary Manslaughter, one count of Tampering with Evidence, one count of Having Weapons Under a Disability, one count of Receiving Stolen Property, and one count of Trafficking in Drugs. The Murder and Involuntary Manslaughter counts all involved the same victim, and all contained firearm specifications. In 2002, a new indictment added an eighth count, for Involuntary Manslaughter, involving the same victim.
 {¶ 5} "The trial court sustained Davis's motion for a judgment of acquittal on the Receiving Stolen Property and Trafficking in Drugs counts. The jury acquitted Davis of the two Murder counts, but returned verdicts of guilty as to the remaining counts. There was, however, a defect in *Page 3 
however, a defect in the form of the verdict of guilty on the eighth count, for Involuntary Manslaughter. Over objection, about two hours after the jury had been discharged, it was reconvened, and it was given a proper verdict form as to the eighth count. It again returned a verdict of guilty on this count.
 {¶ 6} "A judgment of conviction was entered, and Davis was sentenced to a term of incarceration totaling nineteen years. Davis appealed. We reversed his conviction on the eighth count, holding that the trial court erred by re-convening the jury after it had been discharged. We also reversed the consecutive sentences. State v. Davis, 2003-Ohio-4839. Upon the State's application for reconsideration, we remanded the eighth count for re-trial.
 {¶ 7} "Upon remand, Davis waived his right to a jury trial, and the parties agreed to submit the eighth count to the trial court solely upon the transcripts and exhibits from the first trial. The trial court found Davis guilty of the eighth count — Involuntary Manslaughter as a first-degree felony. Over Davis's objection, the State was allowed to elect to have Davis sentenced on the eighth count, rather than the third count, which charged Involuntary Manslaughter as a third-degree felony. Davis was sentenced on the eighth count, which had a firearm specification, to ten years, plus three years for the firearm specification, for a total of thirteen years, to be served concurrently with the sentences previously imposed for Tampering with Evidence and Having Weapons Under a Disability. The total sentence was thirteen years, since the other sentences did not exceed the sentence for Involuntary Manslaughter with a firearm specification.
 {¶ 8} "Davis again appealed. This time he was successful in obtaining a reversal and discharge as to the eighth count. *Page 4 
 {¶ 9} "When the case was remanded to the trial court for re-sentencing, a new judge had succeeded the original trial judge. At a hearing at which no additional evidence was submitted, the new trial judge imposed a sentence of five years on the third-degree Involuntary Manslaughter conviction (the third count of the original indictment), plus a three-year sentence for the firearm specification, for a total of eight years. The trial court imposed a sentence of five years on the Tampering with Evidence conviction, to be served consecutively to the eight-year sentence for Involuntary Manslaughter with the firearm specification. A twelve-month sentence was imposed for Having Weapons Under a Disability, but this sentence was ordered to run concurrently with the other sentences. The total sentence imposed, then, was once again thirteen years."
 {¶ 10} Davis appealed the sentence and argued that the trial court was without authority to change the previously concurrent sentences into consecutive sentences. Among other issues, he further argued that the imposition of maximum, consecutive sentences violated the United States Supreme Court's holding in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531.
 {¶ 11} In Davis III, we concluded that the trial court was not required to make findings of fact when it previously imposed concurrent sentences. Thus, the concurrent sentences were the result of the exercise of discretion, rather than the necessary result of required findings of fact, and Double Jeopardy was not implicated. However, pursuant to State v. Foster (2006), 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, we reversed the consecutive sentences imposed by the trial court and remanded for re-sentencing.
 {¶ 12} At the re-sentencing hearing on July 11, 2006, the trial court increased the previous sentence of thirteen (13) years to fourteen (14) years by ordering that the sentences for each *Page 5 
sentences for each individual offense be served consecutively. After the trial court imposed the sentence, defense counsel asked for and was granted permission to object to the increased sentence. As defense counsel was articulating his objection, the sentencing judge abruptly left the bench without ruling on said objection.
 {¶ 13} It is from this judgment which Davis now appeals.
 II {¶ 14} Davis' first assignment of error is as follows:
 {¶ 15} "BECAUSE THE TRIAL COURT DID NOT HAVE AUTHORITY TO CHANGE THE [sic] DAVIS' CONCURRENT SENTENCES TO CONSECUTIVE SENTENCES FOLLOWING A REMAND BY THE COURT OF APPEALS, THE CONSECUTIVE SENTENCES IMPOSED ON DAVIS ARE CONTRARY TO LAW AND VIOLATE THE UNITED STATES CONSTITUTION'S PROTECTIONS PROHIBITING DOUBLE JEOPARDY AND GUARANTEEING DUE PROCESS."
 {¶ 16} In his first assignment, Davis contends that the trial court did not have the authority to change his concurrent sentences into consecutive sentences pursuant to the sentencing packaging doctrine which was rejected by the Ohio Supreme Court in State v. Saxon (2006),109 Ohio St. 3d 176, 846 N.E.2d 824, 2006-Ohio-1245. While we agree that the sentencing packaging doctrine has been abandoned as it applies to Ohio state law, we find Davis' reliance on Saxon to be misplaced in light of the Supreme Court's holding in State v. Foster (2006),109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856.
 {¶ 17} Davis is correct in his argument that the Supreme Court's holding in Saxon is now the law of the case and the sentence packaging doctrine has been rejected in Ohio. However, he ignores the fact that inDavis III we reversed and remanded in light of the Supreme Court's holding *Page 6 
Supreme Court's holding in Foster which essentially found that R.C. § 2929.14(E)(4) violated the principles set forth in Blakely and that the use of such sentencing criteria is unconstitutional because they "require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences." Foster at ¶ 65-67, ¶ 83. The supreme court severed the provisions that it found to be unconstitutional, including R.C. § 2929.14(E)(4) and R.C. § 2929.19(B)(2). Id. at ¶ 97. In light of this holding, judicial factfinding is no longer required before the imposition of consecutive prison terms. Id. at ¶ 99; State v.Mathis, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855, ¶ 37.
 {¶ 18} At the re-sentencing hearing from which Davis presently appeals, the trial court was free to "consider those portions of the sentencing code that are unaffected by [Foster] and impose any sentence within the appropriate felony range. If the offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." Foster at ¶ 105. Upon remand Davis had the option of arguing for concurrent sentences, but nothing prevented the trial court from imposing consecutive sentences. State v.Mitchell (March 31, 2006), Montgomery App. No. 21020, 2006-Ohio-1602.
 {¶ 19} While the trial court may have mistakenly relied on the sentencing packaging doctrine when it initially imposed consecutive sentences, we reversed the sentence imposed by the court on the basis of the holding in Foster. Thus, upon remand, the trial court was free to impose consecutive sentences, which it evidently chose to do. There is nothing in the record of the re-sentencing hearing from July 11, 2006, which demonstrates that the trial court relied on the sentencing packaging doctrine when it imposed consecutive terms of imprisonment for Davis' *Page 7 
terms of imprisonment for Davis' multiple offenses.
 {¶ 20} Davis' first assignment of error is overruled.
 III {¶ 21} Davis' second assignment of error is as follows:
 {¶ 22} "THE TRIAL COURT ERRED AND VIOLATED THE APPELLANT'S RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY IMPOSING A LONGER SENTENCE AFTER APPELLANT HAD SUCCESSFULLY APPEALED HIS CONVICTION AND SENTENCE."
 {¶ 23} In his second assignment, Davis argues that the trial court erred by imposing a longer sentence after he had successfully appealed his previous conviction and sentence without making affirmative findings on the record regarding events that were discovered after the original sentencing. The record reveals that when this case was remanded to the trial court for re-sentencing after the second appeal, the court imposed a sentence totaling thirteen (13) years. After a third remand in this matter, the same trial judge re-sentenced Davis to a term of imprisonment totaling fourteen (14) years at the hearing on July 11, 2006. It is undisputed that upon sentencing Davis to a longer sentence, the trial court did not provide any reasons or make any findings that would support an enhancement of the appellant's sentence.
 {¶ 24} As we held in State v. Nelloms (2001), 144 Ohio App.3d 1, 4,759 N.E.2d 416:
 {¶ 25} "The Supreme Court has held that a trial court violates the Due Process Clause of the Fourteenth Amendment when it re-sentences a defendant to a harsher sentence, motivated by vindictive retaliation.North Carolina v. Pearce (1969), 395 U.S. 711, 724, 89 S.Ct. 2072, 2080. *Page 8 
711, 724, 89 S.Ct. 2072, 2080. Further, a presumption of vindictiveness arises when the same judge re-sentences a defendant to a harsher sentence following a successful appeal. Id. at 726,89 S.Ct. at 2081. In order to overcome the presumption, the trial court must make affirmative findings on the record regarding conduct or events that occurred or were discovered after the original sentencing. Id.; Wasmanv. United States (1984), 468 U.S. 559, 104 S.Ct. 3217. This means that a trial court may impose an enhanced sentence, but it must demonstrate that it was not motivated by vindictiveness toward the defendant for exercising his rights. Pearce, 395 U.S. at 723, 89 S.Ct. at 2079."
 {¶ 26} Pearce requires that the trial court make findings based upon objective information concerning identifiable conduct on the part of the defendant. 395 U.S. at 726, 89 S.Ct. 2072. "Relevant conduct or events" sufficient to overcome the presumption of vindictiveness are those that throw "new light upon the defendant's `life, health, habits, conduct, and mental and moral propensities.'" Wasman v. United States,468 U.S. at 570-71, 104 S.Ct. 3217 (quoting Williams v. New York (1949),337 U.S. 241, 245, 69 S.Ct. 1079). Thus, a court imposing an enhanced sentence on remand must "detail the reasons for an increased sentence or charge" so that appellate courts may "ensure that a non-vindictive rationale supports the increase." Id. at 572, 104 S.Ct. 3217.
 {¶ 27} In State v. Mitchell (March 31, 2006), Montgomery App. No. 21020, 2006-Ohio-1602, we recently discussed the impact of theFoster decision in conjunction with the imposition of an enhanced sentence after a successful appeal by the defendant. "Before imposing a greater/harsher sentence, the trial courts should be mindful of the restraints set forth in North Carolina v. Pearce (1969), 395 U.S. 711,89 S.Ct. 2072. As the Pearce decision emphasized `the factual data upon which the increased sentence is based must be made part of the record, so that *Page 9 
be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.' Id. at 2081."
 {¶ 28} At the sentencing hearing, the trial court did not make any affirmative findings on the record that would support the imposition of an additional year on Davis' sentence. The aunt of the victim, speaking on behalf of the victim's mother, was allowed to discuss on the record how the death of the victim has adversely affected her family and also how the victim's children are having difficulty understanding the circumstances of his death. Following the aunt's victim impact statement, the trial court immediately proceeded to impose sentence on Davis without providing any reasons for enhancing his sentence and stated in pertinent part:
 {¶ 29} "The Court: All right. Thank you. Mr. Davis, I first need to inform you that upon your release from prison, you'll be placed on a mandatory three years of Post Release Control. If you violate that, there will be sanctions including but not necessarily limited to the return to prison for up [to] one-half of your original sentence.
 {¶ 30} "If you commit a felony offense while you're on Post Release Control, you can go back to prison for the amount of time you have remaining on Post Release Control ot one year, whichever is greater; and that would be in addition to the time you'd get for the new felony offense.
 {¶ 31} "The Court is going to order at this time that on the involuntary manslaughter offense, the felony of the third degree with the gun specification, that you serve a sentence of five years in the Ohio State Penitentiary plus three years for the gun specification for a total of eight in the Ohio State Penitentiary.
 {¶ 32} "On the weapons under disability, the Court is going to impose a sentence of one *Page 10 
one year in the Ohio State Penitentiary.
 {¶ 33} "For the tampering with evidence, the Court is going to impose a sentence of five years in the Ohio State Penitentiary. These sentences are ordered to run consecutively for a total of 14 years in the Ohio State Penitentiary. You're also ordered to pay court costs. That's all for today.
 {¶ 34} "Defense Counsel: Your Honor, can I make an objection for the record.
 {¶ 35} "The Court: Sure.
 {¶ 36} "Defense Counsel: I would object to the increasing the sentence after a successful appeal, which appears to be retaliatory. I would also note for the record that Court has walked out of the courtroom while this motion was being made. Thank you.
 {¶ 37} "The State: I would note that the Court was still present when the objection was being made, although he was in the process of leaving."
 {¶ 38} Not only does this behavior on the part of the trial court evidence an utter disregard for Davis and his counsel, but the court's apparent refusal to provide reasons for enhancing Davis' sentence also fails to overcome the Pearce presumption of vindictiveness. Thus, the presumption of vindictiveness arises, and is not overcome by any trial court findings affirmatively appearing on the record. Since the record is devoid of any justifiable reasons to rebut the Pearce presumption, Davis' second assignment of is sustained. On the authority contained in Section 3(B)(2), Article IV of the Ohio Constitution and R.C. §2953.08(G)(2)(b), the sentence is modified to the sentence of five (5) years on the involuntary manslaughter charge, plus three (3) years on the firearm specification, five (5) years on the tampering with evidence charge to run consecutively to the manslaughter charge, and one (1 ) year on the weapons under disability charge to run concurrently to the manslaughter charge for a total of thirteen (13) years in the Ohio State Penitentiary as *Page 11 
manslaughter charge for a total of thirteen (13) years in the Ohio State Penitentiary as initially imposed at the trial court's April 1, 2005, sentencing hearing, and this case remanded solely for the execution of this modified sentence.
 {¶ 39} Davis' second assignment of error is sustained.
 IV {¶ 40} Davis' third and final assignment of error is as follows:
 {¶ 41} "APPLYING THE REMEDY FROM STATE v. FOSTER TO DAVIS DEPRIVES HIM OF HIS DUE PROCESS RIGHTS."
 {¶ 42} In his final assignment, Davis contends that the retroactive application of the remedial holding in Foster acts as an ex post facto law and is precluded by the Fifth Amendment's Due Process Clause. Specifically, Davis argues that when he originally tried, statutory safeguards were in place regarding maximum and consecutive sentences. If the trial court inappropriately sentenced him by failing to make the necessary findings, he would have the ability to appeal. Davis argues that if Foster's retroactive severance remedy is applied to him then he becomes subject to ex post facto substantive law changes. Davis requests that we apply the sentencing laws as they were written at the time he committed his offenses. We decline to do so for the following reasons.
 {¶ 43} Initially, it should be noted that this court is bound to follow the decision of the Ohio Supreme Court in Foster. State v.Smith (Aug. 25, 2006), Montgomery App. No. 21004, 2006-Ohio-4405. We "cannot overrule or modify Foster." State v. Newman (Aug. 9, 2006), Summit App. No. 23038, 2006-Ohio-4082. We do not have the jurisdiction to declare Foster unconstitutional. State v. Durbin (Sept. 29, 2006), Greene App. No. 2005-CA-134, 2006-Ohio-5125. "Moreover, even if we were not bound by the mandate in Foster, we do not believe that the Ohio Supreme *Page 12 Foster, we do not believe that the Ohio Supreme Court's holding in that case operates as an ex post facto law." Smith, supra,2006-Ohio-4405.
 {¶ 44} The United States Constitution, Article I, Section 10, provides that no State shall pass an ex post facto law. Id. The United States Supreme Court stated that "[t]he Ex Post Facto Clause, by its own terms, does not apply to the courts." Rogers v. Tennessee (2001), 532 U.S. 451,460, 121 S.Ct. 1693. Retroactive judicial decision-making is limited by the due process concept of fair warning, not by the ex post facto clause. State v. Bruce (2007), — N.E.2d —, 2007-Ohio-175; see Rogers v.Tennessee, 532 U.S. at 459. "With respect to judicial decisions, fair warning is violated when the judicial interpretation is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" Id.; see Rogers v. Tennessee, 532 U.S. at 461,462; see also Bouie v. Columbia (1964), 378 U.S. 347, 354,84 S.Ct. 1697.
 {¶ 45} In State v. Smith (Aug. 25, 2006), Montgomery App. No. 21004,2006-Ohio-4405, we stated the following:
 {¶ 46} "The federal appellate courts have addressed the ex post facto argument in relation to the United States Supreme Court's decision inUnited States v. Booker (2005), 543 U.S. 220, which held that the federal statutory sentencing guidelines were unconstitutional if mandatorily applied, and remedied the situation by making the guidelines advisory. See U.S. v. Scroggins (C.A. 5, 2005), 411 F.3d 572; U.S. v.Duncan (C.A. 11, 2005), 400 F.3d 1297; U.S. v. Fairclough (C.A. 2, 2006), 439 F.3d 76. In United States v. Jamison, the Seventh Circuit Court of Appeals held that the remedial holding in Booker did not violate the ex post facto clause. (C.A. 7, 2005), 416 F.3d 538, 539. The Court stated that `Jamison knew that he was committing a crime at the time he distributed cocaine base. The new judicial interpretation of the law brought about by *Page 13 
The new judicial interpretation of the law brought about byBooker affects his punishment, not whether his conduct was innocent. Distributing cocaine base was not made a crime by the Court's decision in Booker. Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code. Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in Rogers.' Id."
 {¶ 47} As we found in Smith, we find the Seventh Circuit's rationale applicable to Davis' situation in light of the Ohio Supreme Court's decision in Foster. Davis knew that his actions constituted a crime when he shot the victim. The Ohio Supreme Court's decision to sever the provisions of the Ohio sentencing statutes in Foster affects Davis' punishment, not whether his actions constituted a criminal act. The range of punishment Davis faced before the decision in Foster was already statutorily mandated, and after Foster, Davis still faced the same statutory range when his case was remanded for re-sentencing. Just as in Jamison, Davis was aware of the possible sentence he faced when committing the crimes of involuntary manslaughter, tampering with evidence, and having a weapon under disability, and therefore, we conclude that the Ohio Supreme Court's decision in Foster does not violate the ex post facto clause.
 {¶ 48} Davis' third and final assignment of error is overruled.
 V {¶ 49} In light of the foregoing, Davis' second assignment of error of is sustained. On the authority contained in Section 3(B)(2), Article IV
of the Ohio Constitution and R.C. § 2953.08(G)(2)(b), the sentence is modified to the sentence of five (5) years on the involuntary manslaughter charge, plus three (3) years on the firearm specification, five (5) years on the *Page 14 
years on the tampering with evidence charge to run consecutively to the manslaughter charge, and one (1) year on the weapons under disability charge to run concurrently to the manslaughter charge for a total of thirteen (13) years in the Ohio State Penitentiary as initially imposed at the trial court's April 1, 2005, sentencing hearing, and this case remanded solely for the execution of this modified sentence.
WOLFF, P.J. and GRADY, J., concur.
Copies mailed to:
William H. Lamb
Richard E. Mayhall
 Hon. Douglas M. Rastatter *Page 1