# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10811
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

QUAYLAN ANDERSON,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 3:12-CR-234-1

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Quaylan Anderson ("Defendant") pleaded guilty to one charge of Producing Child Pornography in violation of 18 U.S.C. § 2251(a) and (e). He challenges the denial of his motion for suppression of the evidence. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10811

## I. Background

A thirteen-year-old girl known as "Jane Doe" ("Doe") ran away from her foster home. Doe was accompanied by an eighteen-year-old female ward, known as "RW." Three days later, while attempting to locate Doe, Texas police officers received information from RW leading them to believe that Doe was in a home belonging to Defendant's grandmother, Mamie Anderson ("Anderson").

Officers J. Acosta ("Acosta") and A. Woods ("Woods") asked Anderson for permission to enter the home and search for Doe. Anderson refused the request, telling the officers that they would have to obtain a search warrant to enter. She also insisted that Doe was not in the house. After Anderson refused entry, Acosta and Woods left and called their duty supervisor, Officer C. Huerta ("Huerta"), to assist them. In the meantime, RW told police that Doe had engaged in sexual intercourse with the 24-year old Defendant earlier that day. In light of this information, the officers again attempted to get consent from Anderson to enter the home; she again refused. At this point, Acosta handed Anderson a portable phone and had her speak with his supervisor, Sergeant T.C. May ("May"). After speaking with May, Anderson allowed the officers into her home to search for Doe.

The officers located Doe in a locked bedroom with Defendant, who was placed under arrest. Doe told the officers that Defendant had engaged in intercourse with her and that he had recorded it on his cellular phone. The officers sought, obtained, and executed a search warrant to return to the home and collect and search the cellular phone. Defendant was charged with Production of Child Pornography in violation of § 2251(a) and (e) and Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a), (b)(1), and (b)(2).

Defendant moved to suppress the evidence obtained as a result of the search of Anderson's home as well as the evidence acquired from the subsequent search warrant. At the suppression hearing, there was some

dispute over what exactly May said to Anderson in order to obtain her consent. Anderson's side of the conversation was recorded by officers at the home, but May's side was not recorded. He testified that he attempted to gain Anderson's consent first by advising her that she could be arrested if Doe was found in the house *and* Anderson knowingly concealed that information from the police. After Anderson still refused to consent, May appealed to Anderson as a grandmother, asking her whether she would want the police to do everything they could to find her granddaughter. According to May and Huerta, it was this appeal that led to Anderson's consent, which was corroborated by the recording reflecting her statement that "of course I would," and then saying "ok, I'm going to let them in and look 'cause I haven't seen nobody so I don't have anything to hide." She then stepped aside and allowed the officers to enter her house. Acosta also testified.

Anderson, on the other hand, testified that she only consented because May threatened to put her under arrest for refusing to consent to the search, regardless of whether she knew of Doe's whereabouts. Based on the evidence presented, the trial court found the testimony of May and Huerta to be credible and corroborated by the video evidence. It also found that Acosta's testimony supported May and Huerta's testimony. Finally, the trial court did not find Anderson to be a credible witness because the video evidence indicated that she consented as a result of May's appeal to Anderson's emotions, rather than his statements that she could be arrested for harboring Doe.

After the trial court denied his motion to suppress the evidence, Defendant pleaded guilty, pursuant to a plea agreement reserving his right to appeal the suppression ruling, to one count of production of child pornography and was sentenced. He now appeals the district court's denial of the motion to suppress the evidence, asserting that the police conducted an illegal search of

No. 13-10811

Anderson's home and that the government failed to turn over *Brady* information related to Acosta's credibility.

## II. Discussion

### A. Voluntariness of the Consent

The district court found that Anderson's consent was given voluntarily and that, in the alternative, exigent circumstances existed to enter Anderson's home given RW's indication that Defendant was engaging in sexual intercourse with a minor, Doe. In reviewing a denial of a motion to suppress the evidence, we review factual findings, including credibility choices, for clear error. *United States v. Solis*, 299 F.3d 420, 435 (5th Cir. 2002). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). We view the evidence in the light most favorable to the prevailing party. *Id.*

Warrantless searches are not considered per se unreasonable when the search is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Whether the consent was voluntary is a question of fact to be determined by the totality of the circumstances. *Id.* at 227. Defendant challenges the voluntariness of Anderson's consent, arguing that the police procedures were coercive because May threatened to arrest Anderson if she refused consent. However, the district court found that May told Anderson she would be arrested only if she *knew* Doe was in her house; the district court also explicitly rejected Anderson's testimony that May threatened to arrest her regardless of her knowledge. There was no clear error in the district court's determination since it was a plausible credibility determination in light of the evidence. *See Jacquinot*, 258 F.3d at 427. Furthermore, the evidence supports the district court's determination that Anderson's will was not overborne by May's statement that she could be arrested if she was knowingly concealing Doe because Anderson continued to refuse consent until May appealed to her

4

emotions. Because there is no clear error, we affirm the district court's finding that Anderson's consent was voluntary.[1] *See id.*

B. *Brady* Claim

Before the suppression hearing, the government received potential *Brady* evidence regarding Acosta's credibility. This information was submitted to the district court at the suppression hearing, and after assessing the information *in camera*, the district court concluded that the government had no disclosure obligations. Defendant has requested that we independently review the sealed materials to determine whether the district court clearly erred in finding no disclosure obligations. *See United States v. Scroggins*, 485 F.3d 824, 836 (5th Cir. 2007) (conducting an independent review of information that the district court reviewed *in camera* for *Brady* information). We review a district court's ruling that potential *Brady* material reviewed *in camera* is not discoverable only for clear error. *See United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011).

To prevail, Defendant would need to show that the district court clearly erred in concluding, *inter alia*, that the undisclosed evidence was material. *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) (citation and internal quotation marks omitted). Even if the evidence under seal affected Acosta's credibility generally, it would not have changed the district court's ruling because Acosta's testimony, which did not address the contents of the

---

[1] For this reason, we need not reach the issue of whether the district court erred in its alternate finding that there were exigent circumstances.

critical May—Anderson conversation[2], played no material role in determining whether Anderson voluntarily consented. *See id.* Furthermore, the record shows that Acosta's testimony did nothing more than corroborate the testimony provided by Huerta and May, whom the court found independently credible, and was corroborated by the videotape evidence. Therefore, Defendant's ability to undermine Acosta's credibility in general would not have changed the district court's ruling. *See id.* The district court did not clearly err in determining that the prosecution was under no obligation to disclose the information. *See id.*

AFFIRMED.

---

[2]   It appears that the defense called Acosta to rebut the claim of exigent circumstances.